UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| SANYO NORTH AMERICA CORPORATION, | ) ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:06-cv-0405-LJM-WTL |
| | ) | |
| AVCO CORPORATION, *et al.*, | ) | |
| Defendants. | ) | |

**ORDER ON MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AND
MOTION TO CERTIFY QUESTIONS TO THE INDIANA SUPREME COURT**

This cause is before the Court on Defendant's, Avco Corporation ("Avco"), Motion for

Partial Judgment on the Pleadings and Plaintiff's, Sanyo North America Corporation ("Sanyo"),

Motion to Certify four questions of Indiana state law to the Indiana Supreme Court.  Specifically,

Avco and Sanyo's Motions concern Counts III (illegal dumping), IV (negligence), V (trespass) and

VI (nuisance) of Sanyo's Second Amended Complaint (the "complaint").[1]

For the reasons stated herein, the Court **GRANTS** Avco's Motion for Partial Judgment on

the Pleadings and **DENIES** Sanyo's Motion to Certify questions to the Indiana Supreme Court.

---

[1]  Sanyo has since filed a Third Amended Complaint that apparently eliminates those
defendants who have been dismissed from the case.  It has not changed the relevant factual
allegations or counts.  Consequently, the Court will continue to refer to the Second Amended
Complaint's paragraph numbers as designated in that complaint and in the parties' briefs.

## I.  BACKGROUND

On December 28, 1939, the Crosley Corporation ("Crosley") acquired real property located at 1751 Sheridan Street, Richmond, Indiana (the "Richmond Site"), and used the property for automotive manufacturing.  Second Am. ¶¶ 23, 26, 27.

In 1947, Avco acquired both Crosley and the Richmond Site and thus is the successor in interest to Crosley.  *Id.* ¶¶ 28, 29.  Among other things, Avco manufactured ordnance, small arms, and guidance mechanisms for Polaris missiles and gun sights until 1975.  *Id.* ¶ 30.

On January 7, 1975, Design and Manufacturing purchased the Richmond Site from Avco and manufactured dishwashers and porcelain fixtures there until 1986.  *Id.* ¶¶ 31, 32.

On March 3, 1986, Sanyo purchased the Richmond Site from Design and Manufacturing.  *Id.* ¶ 23.  At that time, "the Richmond Site consisted of approximately 110 acres, two main buildings comprising approximately 1,000,000 square feet, a power house and two guard houses."  *Id.*

Sanyo alleges that all of these prior owners of the Richmond Site contributed to its hazardous material contamination.  *Id.* ¶ 25.  Moreover, Sanyo asserts that

> [h]azardous substances are present in the surface and subsurface soil at, below, and adjacent to the Richmond Site.  Volatiles and semi-volatile organic compounds including fly ash, buried drums, unexploded ordnance, poly-chlorinated biphenyls, Aroclor 1254[,] and trichloroethylene[,] have been detected on or beneath the Richmond Site and/or on or beneath the properties approximate thereto.

*Id.* ¶ 40.  Sanyo also alleges that during each of their ownerships, both Crosley and Avco caused and/or contributed to the handling, storage, treatment, transportation, and/or disposal, of hazardous substances at or on the Richmond Site.  *Id.* ¶¶ 36, 37.

Sanyo states that it was not aware of the hazardous substances when it purchased the Richmond Site. *Id.* ¶ 35. Sanyo claims that the presence of the hazardous substances on the Richmond Site creates "an imminent and substantial endangerment." *Id.* ¶ 47.

Avco now brings this Motion for Partial Judgment on the Pleadings for Counts III through IV of Sanyo's complaint and asserts that "these four claims are untenable on the facts of this case." Def.'s Br. Supp. at 2. In response, Sanyo brings a Motion to Certify the four questions raised in these Counts to the Indiana Supreme Court or, alternatively, requests that this Court deny Avco's Motion for Partial Judgment on the Pleadings and allow current landowners, such as Sanyo, to pursue these causes of action against prior owners of the same property.

Both Avco and Sanyo's Motions concern the same issues: whether Indiana's Illegal Dumping Statute, Indiana Code § 13-30-3-13, allows a current owner to sue a prior owner of the same property who dumped solid waste there and left it behind (Count III); whether a current owner can sue a prior owner of the same property for negligence because the prior owner dumped but did not remove the solid waste (Count IV); whether a current owner can sue a prior owner of the same property for trespass for acts committed when the prior owner owned the property (Count V); whether a current owner can sue a prior owner of the same property for nuisance created by the continued presence of solid waste contamination (Count VI). The Court addresses each Count below.

## II.  LEGAL STANDARDS

### A.  JUDGMENT ON THE PLEADINGS

Defendant has moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) ("Rule 12(c)"). When a party moves for judgment on the pleadings under Rule

12(c), the standard is the same as for a motion to dismiss for failure to state a claim under Rule

12(b)(6). *See R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs*, 335 F.3d

643, 647 (7th Cir. 2003). The Court may consider only the pleadings and must view the allegations

in the light most favorable to the non-moving party. *See id.* The pleadings include the complaint,

answer, and any documents attached thereto as exhibits. *See N. Ind. Gun & Outdoor Shows, Inc. v.*

*City of South Bend*, 163 F.3d 449, 452-53 (7th Cir. 1998). Moreover, "documents attached to a

motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's

complaint and are central to [its] claim." *Wright v. Assoc'd. Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir.

1994). The motion may be granted only if it appears beyond any doubt that the plaintiff cannot prove

any facts consistent with the complaint that would support a claim for relief. *See Guise v. BWM*

*Mortgage, LLC*, 377 F.3d 795, 798 (7th Cir. 2004).

## B.  CERTIFYING QUESTIONS

Rule 64 of the Indiana Rules of Appellate Procedure ("Rule 64") provides for "Certified

Questions Of State Law From Federal Courts" to the Indiana Supreme Court:

> A. Applicability. The United States Supreme Court, any federal circuit court of
> appeals, or any federal district court may certify a question of Indiana law to the
> Supreme Court when it appears to the federal court that a proceeding presents an
> issue of state law that is determinative of the case and on which there is no clear
> controlling Indiana precedent.
>
> B. Procedure. The federal court shall certify the question of Indiana law and
> transmit the following to the clerk:
>
>> (1)  a copy of certification of the question;
>>
>> (2) a copy of the case docket, including the names of the parties and
>> their counsel; and

(3) appropriate supporting materials.

The Supreme Court will then issue an order either accepting or refusing the question. If accepted, the Supreme Court may establish by order a briefing schedule on the certified question.

Ind. R. App. P. 64.

"A case is appropriate for certification where it 'concerns a matter of vital public concern, where the issue will likely recur in other cases, where resolution of the question to be certified is outcome determinative of the case, and where the state supreme court has yet to have an opportunity to illuminate a clear path on the issue.'" *Harney v. Speedway SuperAm., L.L.C.*, 526 F.3d 1099, 1101 (7th Cir. May 30, 2008) (quoting *Plastics Eng'g Co. v. Liberty Mut. Ins. Co.*, 514 F.3d 651, 659 (7th Cir. 2008)) (quoting *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630,639 n. 18 (7th Cir. 2002)). Certification is not appropriate if the questions are fact-specific and the decision would lack any broad precedent-setting significance. *Id.* (citing *Plastics Eng'g Co.*, 514 F.3d at 659).

## III.  DISCUSSION

### A.  COUNT III – ILLEGAL DUMPING

In Count III, Sanyo claims relief under Indiana Code §13-30-3-13, or Indiana's Illegal Dumping Statute (the "Illegal Dumping Statute"). The Illegal Dumping Statute provides in relevant part:

(d) A landowner on whose land garbage or other solid waste has been illegally dumped without the landowner's consent, may in addition to other legal or equitable remedy available to the landowner, recover from the person responsible for the illegal dumping:

(1)  reasonable expenses incurred by the landowner in disposing of
the garbage or other solid waste; and

(2) reasonable attorney's fees.

Ind. Code § 13-30-3-13(d).   Sanyo contends that it has proved all the elements of the Illegal

Dumping Statute, specifically that it was "(1) a landowner; (2) on whose land solid waste or garbage;

(3) was illegally dumped; (4) without its consent."  Pl.'s Br. Opp'n, at 9.

Whether Sanyo may successfully pursue its claim under the Illegal Dumping Statute turns

on whether that statute requires contemporaneous ownership of the property at the time of the illegal

dumping.  As explained more fully below, this Court concludes that the plain language of the Illegal

Dumping Statute requires contemporaneous ownership of the property.  As a result, Sanyo may not

pursue this cause of action because it did not own the property when Avco dumped hazardous waste

onto the Richmond Site.

Sanyo alleges that the only state opinion on point, an Indiana Court of Appeals decision,

concluded that "it was 'irrelevant' whether the person seeking recovery under landowner recovery

statute owned the property at the time of the alleged release of solid waste."  Pl.'s Br. Opp'n, at 9.

See W. Ohio Pizza, Inc. v. Clark Oil & Ref. Corp., 704 N.E.2d 1086 (Ind. Ct. App. 1999).  When put

into context, however, the Court concludes that Western Ohio addressed a different issue.  The

Western Ohio court interpreted a contract between the parties, not the meaning of the Illegal

Dumping Statute.  In that case, the court held that the parties' contract for sale of the relevant

property prohibited the subsequent landowner from recovering from the former one under Indiana

Code § 13-30-3-13.  W. Ohio Pizza, 704 N.E.2d at 1093.  In other words, who owned the property

at the time of the dumping was irrelevant under the contract.  Thus, *Western Ohio* is inapplicable to the circumstances of this case.

Alternatively, Sanyo seems to argue that its Motion to Certify is supported by the fact that the *Western Ohio* court did not determine whether the Illegal Dumping Statute requires contemporaneous ownership of the property.  As just discussed, the Court agrees with Sanyo that the *Western Ohio* court did not decide the issue at bar, but that is not determinative.  Rather, a plain reading of the statute and a comparison of the Illegal Dumping Statute to other environmental protection laws guides the Court in reading a contemporaneous ownership requirement into the statute.

First, Sanyo's reading of the Illegal Dumping Statute gives no effect to the requirement that the dumping occur without the landowner's consent.  The statute's plain language provides that a landowner may consent to the illegal dumping on his property and thereby waive his right to bring a claim under the Illegal Dumping Statute.  Given the statute's language, how could future landowners give or not give consent to illegal dumping in the past?  To grant future, undetermined owners of the Richmond Site who did not consent to the past illegal dumping the right to sue under the Illegal Dumping Statute would be illogical and contrary to the plain language of the statute. Sanyo's suggestion to the contrary requires a strained reading of the statute, one that is inconsistent with the plain language and which the Court rejects.  Indeed, this Court has previously commented upon the contemporaneous ownership requirement for recovery under the statute. *See Wickens v. Shell Oil Co.*, No. 1:05-cv-645-SEB-JPG, 2006 WL 3254544, at *5 (S.D. Ind. Nov. 9, 2006) ("Plaintiffs did not own the property at the time the tank began leaking, which is another fact precluding recovery under Indiana Code § 13-30-3-13.")

Moreover, when it so intends, the legislature includes provisions in environmental statutes that grant future landowners the right to sue retroactively. For example, the Underground Storage Tank Act, Indiana Code § 13-23-13-8 ("USTA"), allows a person "to receive contribution from a person who owned or operated the underground storage tank at the time the release occurred." Ind. Code § 13-23-13-8(b). Similarly, Indiana Code § 13-30-9-2, the Environmental Legal Actions Act, provides:

> Sec. 2. A person may bring an environmental legal action against a person who caused or contributed to the release of a hazardous substance or petroleum into the surface or subsurface soil or groundwater that poses a risk to human health and the environment to recover reasonable costs of a removal or remedial action involving the hazardous substances or petroleum.

Ind. Code § 13-30-9-2. Based on these two statutes, it is evident that the legislature knows how to express its intent when it wants to allow a current landowner to sue prior landowners. The absence of such express authority in the Illegal Dumping Statute weighs strongly against Sanyo's arguments.

For the foregoing reasons, the Court concludes that the Illegal Dumping Statute requires a plaintiff to be the owner of the property when the alleged dumping occurs and that the Indiana Supreme Court would concur. Sanyo has pled no facts to support its illegal dumping cause of action because it was not the owner of the property at the time Avco allegedly dumped the waste there. Therefore, the Court **GRANTS** Avco's Motion for Judgment on the Pleadings on Count III of Sanyo's complaint.

### B. COUNT IV – NEGLIGENCE

In its negligence claim against Avco, Sanyo contends that Avco breached a legal duty owed to Sanyo and thereby caused damages to Sanyo. Pl.'s Br. Opp'n, at 12. However, the Court

8

concludes that Avco owed no legal duty to Sanyo under Indiana law and believes that the Indiana Supreme Court would find similarly.

Whether Sanyo can successfully pursue its negligence claim turns on whether Avco owed any legal duty to Sanyo. When there is no clear duty under the law, such as in this case, Indiana courts turn to the standard set forth in *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind. 1991). In that case the Indiana Supreme Court held: "We now conclude that three factors must be balanced . . . (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns." The Court has balanced these factors and concludes that Avco owed no duty to Sanyo under Indiana law.

First, the Court concludes that there is no relationship between these parties. Sanyo relies on *Peters v. Forster*, 804 N.E.2d 736 (Ind. 2004), for the proposition that the Indiana Supreme Court "rejected any requirement that a pre-existing relationship exist between the parties." Pl.'s Br. Opp'n, at 12. The Court cannot agree. *Peters* concerned the abandonment of the acceptance rule that once governed negligence claims against contractors. *Peters* did not consider the negligence issue of the present case, which concerns a current landowner suing a prior landowner for past hazardous waste contamination. The only relationship between Avco and Sanyo is the present action. In the absence of any prior relationship, this Court believes that the Indiana Supreme Court would disfavor finding a legal duty.

With respect to the second and third factors, the Court concludes that the Indiana Supreme Court would rule similarly to this Court and other federal district courts that have addressed the same question. Specifically, the Court adopts the reasoning in *Wickens v. Shell Oil Co.*, No. 1:05-cv-645-SEB-JPG, 2006 WL 3254544, at *5 (S.D. Ind. Nov. 9, 2006):

> The imposition of such a duty would be unreasonable because such future owners may not be known or even contemplated at the time the landowner creates or maintains a condition on his or her property.  Moreover, such a duty would unreasonably interfere with a landowner's right of ownership; the right to do so with his or her property as desired without liability so long as he or she does not interfere with the interests of others.

* * *

> Furthermore, any duty on the part of a common law landowner to future owners of the same property is not compelling in view of the approach taken by the General Assembly in specifically providing the methodology for cleaning-up these types of releases and the cost allocation procedures.  The landowner is hardly without remedy under Indiana law.

2006 WL 3254544 at *7-8 (quoting *Wellesley Hills Realty Trust v. Mobile Oil Corp.*, 747 F. Supp. 93, 100 (D. Mass. 1990)).  *See also McFarland Foods Corp. v. Chevron USA, Inc.*, No. IP 99-1489-C H/G, 2000 WL 684265 (S.D. Ind. May 16, 2000) ("There is no relationship between the plaintiffs and defendants, the reasonable foreseeability of harm is not by itself enough to impose such a duty, and public policy concerns arising from foreseeable harm are addressed by the [USTA]")

Based on the foregoing, the Court concludes that the Indiana Supreme Court would find that it is unreasonable to hold a prior landowner responsible in tort for actions taken approximately forty years before the current owner acquired the land, especially when other adequate remedies are available under statutory law.  Therefore, the Court finds that Sanyo's negligence claim fails and **GRANTS** Avco's Motion for Judgment on the Pleadings as to Count IV of Sanyo's complaint.

**C.  COUNT V – TRESPASS**

Sanyo also alleges that it may "maintain a trespass claim against Avco arising from the continued presence of Avco's hazardous substances on the Richmond Site."  Pl.'s Br. Opp'n, at 17.

10

The Court does not agree and concludes that Sanyo cannot prove any facts that would support a claim for trespass under Indiana law.

Sanyo asserts that the Indiana Supreme Court would likely adopt the version of trespass set out in the Restatement (Second) of Torts § 160 ("Restatement § 160"), which recognizes trespass when "a person who once had a legal right to be on the land [leaves] something there after that right has expired.." Pl.'s Br. Opp'n, at 20. Alternatively, Sanyo argues that the Indiana Supreme Court would find that Avco committed a continuing trespass: "Continuing trespass occurs when there is some continuing or ongoing tortious activity attributable to the defendant . . . . Until the thing tortiously placed on the land, or underneath the land, is removed, then liability for trespass remains." *Id.* at 18.

Indiana's law of trespass requires proof that "the plaintiff was in possession of the land . . . [and] the defendant entered the land without right." *Sigsbee v. Swathwood*, 419 N.E.2d 789, 799 (Ind. Ct. App. 1981) (citing *Indiana Pipe Line Co. v. Christensen*, 123 N.E.789 (Ind. 1919)). Sanyo provides no cogent argument for why the Indiana Supreme Court would abandon its traditional view of trespass and adopt the Restatement or Sanyo's interpretation thereof. Moreover, Sanyo's own view of continuing trespass under Indiana law defeats this cause of action because Avco could not have tortiously placed the waste on the Richmond Site when it owned the property. Therefore, applying Indiana law to the facts here, Sanyo's claim must fail because there is no evidence that Avco contaminated the property at a time during which it was not also the owner of the property.

Because Sanyo has pled no set of facts from which the Court can conclude that Avco trespassed or committed a continuing trespass on the Richmond Site, the Court **GRANTS** Avco's Motion for Judgment on the Pleadings on Count V of Sanyo's complaint.

### D.  COUNT VI – NUISANCE

Lastly, Sanyo pursues a nuisance claim against Avco.  Pl.'s Br. Opp'n, at 22.  However, the Court concludes that Sanyo cannot prove any facts that would support a claim for nuisance under Indiana law.

Indiana law has defined nuisance as:

Whatever is:

(1)  injurious to the health;

(2)  indecent;

(3)  offensive to the senses; or

(4)  an obstruction to the free use of property;

so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action.

Ind. Code § 32-30-6-6.  As noted in *Lilly Indus., Inc. v. Health-Chem Corp.*, 974 F. Supp. 702, 705 (S.D. Ind. 1997), the nuisance statute dates from 1881.  The *Lilly* court also identified past Indiana courts that have elaborated on this definition: "The essence of a private nuisance is the use of property to the detriment of the use and enjoyment of another's property."  *Id.* (quoting *Lever Bros. Co. v. Langdoc*, 655 N.E.2d 577, 582-83 (Ind. Ct. App 1995) (citing *Wernke v. Halas*, 600 N.E.2d 117, 120 (Ind. Ct. App. 1992)).

Sanyo relies on *Gray v. Westinghouse Elec. Corp.*, 624 N.E.2d 49 (Ind. Ct. App. 1993), and *City of Gary v. Smith & Wesson Corp.*, 801 N.E.2d 1222 (Ind. 2003), to support its nuisance claim. However, Sanyo's reliance on these two cases is misplaced.  The court in *Gray* allowed a landowner to sue a manufacturer for nuisance after it dumped chemicals on adjacent land, even though the

manufacturer did not own the adjacent land.  *Gray*, 624 N.E.2d at 53 ("the party which causes a nuisance can be held liable, regardless of whether the party owns or possesses the property on which the nuisance originates").  Additionally, the court in *Smith & Wesson* allowed the city to bring a public nuisance claim against a gun manufacturer.  *Smith & Wesson*, 801 N.E.2d at 1231-33 ("there is no requirement that the activity involve an unlawful activity or use of land").  Thus, neither *Gray* nor *Smith & Wesson* considered the nuisance issue of the present case, which concerns a current landowner suing a prior landowner for past hazardous waste contamination.  The Court is not persuaded that either of these two cases would cause the Indiana Supreme Court to abandon its traditional view that nuisance law does not apply under the circumstances presented in this case.  Instead, the Court is confident that the Indiana Supreme Court would agree with the reasoning in *Lilly*:

> The law of private nuisance, both in Indiana and in most of the United States, provides a mechanism for resolving conflicts between competing, simultaneous uses of nearby property by different landowners . . . .  Nevertheless, in the wake of new claims and litigation involving long-term environmental contamination of property–especially industrial property–recent years have seen numerous efforts to extend nuisance law to the relationship between buyer and seller of the same property.  The vast majority of these efforts have failed.

*Lilly*, 974 F. Supp. at 706.  *See also Wickens*, 2006 WL 3254544, at *6 (Indiana state courts have declined to employ trespass and nuisance doctrines to resolve environmental clean-up disputes).

In light of the prevailing view on the law of private nuisance, the Court concludes that Sanyo's nuisance claim must fail.  Therefore, the Court **GRANTS** Avco's Motion for Judgment on the Pleadings on Count VI of Sanyo's complaint.

13

## IV.  CONCLUSION

For the foregoing reasons, Defendant's, Avco Corporation, Motion for Partial Judgment on

the Pleadings is **GRANTED** and Plaintiff's, Sanyo North America Corporation, Motion to Certify

questions to the Indiana Supreme Court is **DENIED**.

IT IS SO ORDERED this 3rd day of July, 2008.

LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Electronically distributed to:

Knight S. Anderson
HILL FULWIDER MCDOWELL FUNK MATTHEWS
knight@hfmfm.com

Robert Ballard Clemens
BOSE MCKINNEY & EVANS, LLP
rclemens@boselaw.com

Jennifer R. Bergstrom
CLAUSEN & MILLER, PC
jbergstrom@clausen.com

Brian C. Coffey
COHN BAUGHMAN & MARTIN
brian.coffey@mclolaw.com

Jeffrey M. Boldt
LOCKE REYNOLDS LLP
jboldt@locke.com

Frank J. Deveau
TAFT STETTINIUS & HOLLISTER LLP
fdeveau@taftlaw.com

James McGinnis Boyers
WOODEN & MCLAUGHLIN LLP
jboyers@woodmclaw.com

Carrie Gibson Doehrmann
LOCKE REYNOLDS LLP
cdoehrmann@locke.com

Stephen P. Brown
PLUNKETT & COONEY PC
sbrown@plunkettcooney.com

Dale W. Eikenberry
WOODEN & MCLAUGHLIN LLP
deikenberry@woodmaclaw.com

Charles W. Browning
PLUNKETT & COONEY, P.C.
cbrowning@plunkettcooney.com

Jennifer M. Ellin
WILSON & RYAN
jellin@ffic.com

Amelia K. Christensen
MERLO KANOFSKY BRINKMEIER & GREGG, LTD
akc@merlolaw.com

Jonathan P. Emenhiser
PLEWS SHADLEY RACHER & BRAUN
jemenhiser@psrb.com

14

Michael R. Gregg
MERLO KANOFSKY BRINKMEIER & GREGG LTD
mrg@merlolaw.com

J. Matt Harnish
LOCKE REYNOLDS LLP
mharnish@locke.com

Alex C. Intermill
BOSE MCKINNEY & EVANS, LLP
aintermill@boselaw.com

Timothy F. Jacobs
CLAUSEN MILLER, PC
tjacobs@clausen.com

Bruce L. Kamplain
NORRIS CHOPLIN & SCHROEDER LLP
bkamplain@ncs-law.com

Wayne S. Karbal
KARBAL COHEN ECONOMOU SILK& DUNNE LLC
wkarbal@karballaw.com

Ilene M. Korey
CLAUSEN MILLER, PC
ikorey@clausen.com

Kyle Andrew Lansberry
LEWIS & WAGNER
klansberry@lewiswagner.com

Misty Rose Martin
SEGAL MCCAMBRIDGE SINGER & MAHONEY
mmartin@smsm.com

Lawrence D. Mason
SEGAL MCCAMBRIDGE SINGER & MAHONEY
lmason@smsm.com

Tammy Jo Meyer
LEWIS WAGNER LLP
tmeyer@lewiswagner.com

Charles F. Morrissey
KARBAL COHEN ECONOMOU SILK & DUNNE
cmorrissey@karballaw.com

Thomas F. O'Gara
TAFT STETTINIUS & HOLLISTER LLP
togara@taftlaw.com

Amy R. Paulus
CLAUSEN MILLER, PC
apaulus@clausen.com

George M. Plews
PLEWS SHADLEY RACHER & BRAUN
gplews@psrb.com

Peter Jon Prettyman
TAFT STETTINIUS & HOLLISTER LLP
pprettyman@taftlaw.com

Peter M. Racher
PLEWS SHADLEY RACHER & BRAUN
pracher@psrb.com

Allison M. Scott
SEGAL MCCAMBRIDGE SINGER MAHONEY
ascott@smsm.com

Richard S. VanRheenen
BOSE MCKINNEY & EVANS, LLP
rvanrheenen@boselaw.com

Christopher N. Wahl
HILL FULWIDER MCDOWELL FUNK &
MATTHEWS
chris@hfmfm.com

Thomas E. Wheeler II
LOCKE REYNOLDS LLP
twheeler@locke.com

Patrick Eugene Winters
PLUNKETT & COONEY PC
pwinters@plunkettcooney.com

Linn A. Wisnoskey
MERLO KANOFSKY BRINKMEIER &GREGG,LTD.
law@merlolaw.com